# UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| JASPER & ANITA B. WYCHE, | ) | Case Nos.: 08-73778-SCS |
| JASON A. & GABRIELLE S. BREWER, | ) | 09-70602-SCS |
| | ) | |
| *Debtors.* | ) | Chapter 13 |
| | ) | |

## MEMORANDUM OPINION

These matters first came on for hearing on August 6, 2009, upon two Applications for Compensation filed by the Boleman Law Firm. The first Application was filed in Case No. 08-73778 on June 11, 2009. The second Application was filed in Case No. 09-70602 on the same day. The first hearing was continued to September 3, 2009, upon the Chapter 13 Trustee's motion, in order to allow the Trustee time to review additional documentation provided by the Boleman Law Firm. At the hearing held September 3, 2009, the Court continued the matter in order to conduct an evidentiary hearing. The evidentiary hearing was scheduled for October 6, 2009. At the conclusion of the October 6, 2009, evidentiary hearing, the Court took these matters under advisement. The Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157(b)(2) and 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Upon consideration of the evidence and arguments presented by counsel at the hearing and the pleadings submitted, the Court makes the following findings of fact and conclusions of law.

### I. PARTIES AND PROCEDURAL HISTORY

The Boleman Law Firm, P.C. ("Boleman") provides bankruptcy services to consumer

debtors and is headquartered in Richmond, Virginia. At the hearing on October 6, 2009, Mark

Leffler ("Leffler") appeared on behalf of Boleman. Kelly Barnhart appeared on behalf of R.

Clinton Stackhouse, Jr., the Chapter 13 Trustee.

### The Wyche Case

On November 5, 2008, Boleman filed a Chapter 13 Petition for Jasper Wyche, Jr., and

Anita Brendetta Wyche (the "Wyche Case," Case No. 08-73778-SCS). On June 11, 2009,

Boleman filed a Notice and Application for Compensation for the Boleman Law Firm in the

Wyche Case (the "Wyche Application"), whereby the firm requested reimbursement for

expenses in the amount of $655.71.[1] The Chapter 13 Trustee filed a Response to the Wyche

Application ("Trustee's Response") on June 29, 2009. The Trustee's Response requested that

the Wyche Application be denied, asserting that the application contained insufficient

information to allow the Trustee to determine whether the expenses were actual and necessary

and whether the expenses incurred were in the best interests of the debtors or their creditors. The

Trustee alleged that the itemized statement attached to the Application as Exhibit A failed to

disclose the type of documents copied or printed, the number of pages copied or printed from

each document, the month in which the expense was incurred, and the number of documents

mailed at each postage rate.[2] A hearing on the Wyche Application was scheduled for August 6,

2009. The hearing was continued upon the Trustee's motion in order to allow the Trustee time to

---

[1] This amount was requested in addition to the $3,000.00 in legal fees the Debtors agreed to pay
Boleman. According to the Disclosure of Compensation of Attorney for Debtors filed with the
voluntary Chapter 13 petition, the Debtors paid Boleman $250.00 prior to the date of filing.
The Chapter 13 Plan filed in the Wyche Case lists an additional $2,750.00 to be paid as
compensation to Boleman as an administrative expense through the Chapter 13 Plan.

[2] The Trustee also alleged that Exhibit A noted that double sided copies were charged twice but
did not indicate how many copies were double sided.

2

review additional documentation provided by Boleman. At the continued hearing on September 3, 2009, the Court determined that an evidentiary hearing should be conducted as to the Wyche Application and the Trustee's Response.[3] The evidentiary hearing was scheduled for October 6, 2009.

### The Brewer Case

On February 18, 2009, Boleman filed a Chapter 13 Petition for Jason Allen Brewer, Sr., and Gabrielle Stephens Brewer (the "Brewer Case," Case No. 09-70602-SCS). On June 11, 2009, Boleman filed a Notice and Application for Compensation for the Boleman Firm in the Brewer Case (the "Brewer Application"), whereby the firm requested reimbursement for expenses in the amount of $435.63.[4] The Chapter 13 Trustee filed a Response to the Brewer Application that was similar in both form and substance to the Trustee's Response filed in the Wyche Case. Because of the similarity between the Wyche and Brewer Applications and the consistency in the Trustee's Responses to both, the Court elected to conduct hearings on the Wyche and Brewer proceedings together. Accordingly, a hearing on the Brewer Application was scheduled for August 6, 2009, at the same time as the hearing on the Wyche Application. Like in the Wyche Case, the hearing was continued upon the Trustee's motion in order to allow the Trustee time to review additional documentation provided by Boleman. At the continued hearing on September 3, 2009, the Court determined that an evidentiary hearing should be

---

[3] The Court also ordered Boleman to file its current copier system leasing agreements with the Court within fifteen days of the hearing and to provide a copy of the same to the Chapter 13 Trustee.

[4] This amount was requested in addition to the $3,000.00 in legal fees the Debtors agreed to pay Boleman. According to the Disclosure of Compensation of Attorney for Debtors filed with the voluntary Chapter 13 petition, the Debtors paid Boleman $250.00 prior to the date of filing. The Chapter 13 Plan filed in Brewer Case lists an additional $2,750.00 to be paid as compensation to Boleman as an administrative expense through the Chapter 13 Plan.

conducted as to the Brewer Application and the Trustee's Response.[5]  The evidentiary hearing

was scheduled for October 6, 2009, at the same time as the evidentiary hearing on the Wyche

Application was scheduled to be held.

## II. FINDINGS OF FACT

The Boleman Law Firm was formed by G. Russell Boleman in 1991.  Mr. Boleman

currently serves as Chief Executive Officer of the firm.  The firm maintains its principal office in

Richmond, Virginia.  Boleman also operates offices in Virginia Beach and Hampton, Virginia.

John Bollinger ("Bollinger") testified on behalf of Boleman at the evidentiary hearing.

Bollinger stated that he has been employed as an attorney by Boleman since 1994.  He also

testified that his time is split between the Richmond and Virginia Beach offices with the majority

of his time being spent in Richmond.  Bollinger stated that he is familiar with the procedures

employed by Boleman in handling Chapter 13 cases by virtue of his personal experience as a

practicing attorney with the firm.  Bollinger further testified that he has trained other employees

in following the established procedures and that his current duties include ensuring firm-wide

compliance with the same. Transcript of October 6, 2009, hearing, at 7-8 (hereinafter Tr.).

During his testimony at the evidentiary hearing, Bollinger generally described the various

stages of interaction between Boleman employees and the firm's Chapter 13 clients.  According

to Bollinger, Boleman attorneys are trained and instructed to follow a specific protocol in

working with clients to prepare for filing their bankruptcy petitions.  Because the contested

applications for reimbursement seek remuneration for copy, printing, and postage expenses,

Bollinger discussed such expenses as they are typically incurred during each stage of a client's

---

[5] The Court also ordered Boleman to file its current copier system leasing agreements with the
Court within fifteen days of the hearing and to provide a copy of the same to the Chapter 13
Trustee.

Chapter 13 case.  Bollinger described Boleman's handling of Chapter 13 cases as follows.

After checking in with a front-desk clerk at one of Boleman's offices, new clients seeking bankruptcy advice are assisted by an attorney through the "intake" process, which Bollinger characterized as involving a "general discussion as it relates to any type of assets, liabilities, income and expenses . . . ." Tr. at 10.  Bollinger indicated that, during the intake process, certain required disclosures are made and various bankruptcy and non-bankruptcy options are discussed. If the intake stage concludes with a determination that bankruptcy shall be filed by Boleman on the client's behalf, an administrator is assigned to collect necessary information and documentation.[6] Tr. at 10.

In the course of gathering information about a client's financial condition, Boleman uses "several on-line services." Tr. at 15.  According to Bollinger's testimony, these services include NADA[7] and Kelley Blue Book for vehicle valuation, in addition to Zillow, Bank of America, and other sources used to estimate the value of real property. Tr. at 15.  Equifax, a credit reporting agency providing online services, is also used during the intake process to access additional credit and financial information. Tr. at 11.  Bollinger testified that documents are printed directly from these websites and inserted into a client's file. Tr. at 13, 16.  When questioned as to the reason for Boleman's retention of these documents, Bollinger responded that the practice is done as part of the firm's due diligence in handling its clients' bankruptcy cases. Tr. at 13, 16.  When all client information has been gathered, it is compiled and organized into a "work product sheet"

---

[6] Bollinger indicated that such documents would include "pay stubs, judgments, bills, anything that the client brings in that we believe is relevant; notices of foreclosure, anything noted by a creditor, anything noting an amount that may be owed, so we can discuss that further with them." Tr. at 15.

[7] NADA refers to the National Automobile Dealers Association, which collects and publishes data pertaining to new and used vehicles and various automotive service practices.

for the reference of Boleman attorneys and administrators who may later assist in the handling of that particular client's case. Tr. at 11.

Also during intake, clients review a contract setting forth the terms of Boleman's representation. Boleman provides, in addition, certain disclosures required by the Bankruptcy Code. Tr. at 10-14. Copies of these documents are made during intake. Copies of the "intake form," credit authorization pages, and client questionnaires are also rendered as a matter of routine during the initial intake stage. If additional information is required for the case to proceed, Boleman will print a "documents needed" sheet for the client to consult as further preparations are made. Bollinger represented to the Court that the normal intake process had been followed by Boleman in both the Wyche and Brewer cases. Tr. at 14.

Bollinger identified the next stage of the Boleman process as the "sign appointment." Between the intake stage and the sign appointment, Boleman attorneys and administrators review the information and documentation provided by the client. The bankruptcy petition is generated along with schedules, statements, and the Chapter 13 Plan. Bollinger testified that these documents are printed and placed in the client file. Bollinger testified that "[s]ometimes [these documents] are copied as well." Tr. at 21. During the sign appointment, the client pays the required filing fees and is provided a receipt from Boleman. A copy of the receipt is placed in the client's file. Additional documentation is collected at this time, which may include pay stubs, tax forms, and bills. Those documents are copied and placed in the client's file. Tr. at 20-21.

Bollinger explained that credit counseling also occurs during the sign appointment. Credit counseling is facilitated by an administrator or by a Boleman attorney and involves

interface between the client and an online credit counselor.[8]  Several documents are printed during credit counseling, such as a unique user identification and password page, a summary of the client's budget information as it was entered into the credit counseling system, and a confirmation page. Tr. at 23-25.

When credit counseling has been completed, several additional documents are provided to the client.  One such document instructs the client where payments to creditors should be directed during the bankruptcy case.  A timeline is also provided to help the client understand the expected progression of his or her case from beginning to end.  Another document setting forth "the rights and responsibilities of each of the parties, which would include the Boleman Law Firm and the . . . clients themselves" is printed at the sign appointment and thoroughly discussed before the meeting concludes.  The rights and responsibilities document is copied, in addition to any other bills, statements, and forms that may not theretofore have been duplicated.  Tr. at 27-28.

After the sign appointment, two Boleman attorneys review the client file for possible errors and omissions.  A billing form is filled out at this stage, which was described by Bollinger as "a document that's generated internally for accounting purposes." Tr. at 28.  The document is copied and retained for the purpose of "making sure that all of the fees and expenses are accounted for accordingly in the Plan, the standard of compensation, and also the statement of financial affairs." Bollinger stated that Boleman's normal practices were followed prior to, during, and after the sign appointment stages in the Wyche and Brewer cases.  Additionally, the firm's usual methods of tracking attorney time, events, and expenses were employed in the

---

[8] Bollinger testified that the online credit counseling service typically used by Boleman is "CCCS." Tr. at 23.

handling of both matters. Tr. at 29-30.  Bollinger described those tracking methods as follows.

Boleman attorneys use specific software known as "Abacus" for managing and recording their time.  Bollinger explained that employees are required to record their actions regarding specific tasks undertaken for the client in the client's Abacus file.  The firm prefers that these actions be recorded contemporaneously with their completion but allows employees twenty-four hours in which to record the actions after they have been performed.   Abacus keeps a chronological record of actions and events that have occurred in connection with each client's bankruptcy case. Tr. at 17-19.

For tracking internal expenditures in its handling of Chapter 13 cases, Boleman uses a separate electronic system known as "Equitrac."  Equitrac is designed to generate itemized records indicating the number of printouts and paper copies rendered in connection with each bankruptcy case.  These records are organized by task and used by Boleman in its efforts to collect reimbursement of expenses from its clients.  Tr. at 34-36.  To operate, Equitrac requires the entry of a user identification number by a Boleman employee.  The user then identifies a specific client by last name or case number.  Once the client file is located, the user inputs a brief description of the task for which printouts or copies are required.  When the print or copy job has been completed, Equitrac automatically records the number of printouts or copies made incident to the described task.  Logs are generated for each client's case and are comprised of lines indicating the date, task description, number of printouts or copies created, and the initials of the Boleman employee responsible for each print or copy job. Tr. at 34-36.

Because the present controversy pivots on the expenses Boleman incurred for printing and copying in the course of handling the Wyche and Brewer cases, extensive evidence from the Equitrac system was presented to the Court.   In support of its Expense Applications, the

8

Boleman Law Firm provided logs generated by Equitrac to demonstrate the purposes for which printouts and copies were made. The Equitrac logs generated in the Wyche and Brewer cases are reproduced below.[9]

### The Wyche Case

| Date | Description | Type | Count | Rate | Amount |
|------|-------------|------|-------|------|--------|
| 10/3/2008 | PACER Web Check | Copy | 2 | $ 0.15 | $ 0.30 |
| 10/3/2008 | PACER Summary Page | Copy | 1 | $ 0.15 | $ 0.15 |
| 10/3/2008 | Client ID, SSN Card | Copy | 1 | $ 0.15 | $ 0.15 |
| 10/3/2008 | Zillow Property Valuation | Copy | 1 | $ 0.15 | $ 0.15 |
| 10/3/2008 | Equifax Credit Reporting | Copy | 10 | $ 0.15 | $ 1.50 |
| 10/3/2008 | NADA Vehicle Valuation | Copy | 2 | $ 0.15 | $ 0.30 |
| 10/3/2008 | NADA Vehicle Valuation | Copy | 2 | $ 0.15 | $ 0.30 |
| 10/3/2008 | NADA Vehicle Valuation | Copy | 2 | $ 0.15 | $ 0.30 |
| 10/3/2008 | NADA Vehicle Valuation | Copy | 2 | $ 0.15 | $ 0.30 |
| 10/3/2008 | Basic Intake Consultation Documents | Copy | 8 | $ 0.15 | $ 1.20 |
| 10/3/2008 | Internal Intake Documents - Client Fills Out | Copy | 18 | $ 0.15 | $ 2.70 |
| 10/21/2008 | Internal Work Product/Client Information Sheet | Copy | 6 | $ 0.15 | $ 0.90 |
| 10/21/2008 | Worksheet for Calculating Plan Amounts | Copy | 2 | $ 0.15 | $ 0.30 |
| 10/21/2008 | Chapter 13 Petition for Client Review | Copy | 62 | $ 0.15 | $ 9.30 |
| 10/21/2008 | Chapter 13 Plan for Client Review | Copy | 9 | $ 0.15 | $ 1.35 |
| 10/21/2008 | Schedules I, J, Special Notices | Copy | 4 | $ 0.15 | $ 0.60 |
| 10/21/2008 | Bills Provided by Clients for Attorney Review | Copy | 85 | $ 0.15 | $ 12.75 |
| 11/5/2008 | Paperwork Signed by Clients | Copy | 9 | $ 0.15 | $ 1.35 |
| 11/5/2008 | Schedules for Client Review | Copy | 18 | $ 0.15 | $ 2.70 |
| 11/5/2008 | Chapter 13 Plan for Client Review | Copy | 9 | $ 0.15 | $ 1.35 |
| 11/5/2008 | Receipt of Payment by Client | Copy | 2 | $ 0.15 | $ 0.30 |
| 11/5/2008 | Credit Counseling -- User ID and Password | Copy | 2 | $ 0.15 | $ 0.30 |
| 11/5/2008 | Credit Counseling -- Disclosures | Copy | 4 | $ 0.15 | $ 0.60 |
| 11/5/2008 | Credit Counseling -- Budget Liability List | Copy | 4 | $ 0.15 | $ 0.60 |
| 11/5/2008 | Credit Counseling -- Confirmation of Completion | Copy | 4 | $ 0.15 | $ 0.60 |
| 11/5/2008 | Unknown -- Possibly Related to Sign Appt. | Copy | 23 | $ 0.15 | $ 3.45 |
| 11/5/2008 | Rights and Responsibilities | Copy | 16 | $ 0.15 | $ 2.40 |
| 11/5/2008 | Schedules Reprinted During Sign Appt. | Copy | 11 | $ 0.15 | $ 1.65 |
| 11/5/2008 | Petition Provided to Client | Copy | 61 | $ 0.15 | $ 9.15 |
| 11/5/2008 | ECF Notice of Petition Filing Provided to Client | Copy | 2 | $ 0.15 | $ 0.30 |
| 11/5/2008 | Internal Documents Printed During Sign Appt. | Copy | 26 | $ 0.15 | $ 3.90 |

---

[9] The original Equitrac logs provided to the Court included acronyms and other phrases, the meanings of which were not readily ascertainable without explanation from someone familiar with Boleman's recording practices. Bollinger thus offered testimony as to the description of each Equitrac entry. The descriptions represented here reflect the Court's understanding of Bollinger's testimony as it pertains to the representations on the Equitrac documents admitted as Plaintiff's Exhibit 2 at the October 6, 2009 hearing.

| | | | | | | |
|---|---|---|---|---|---|---|
| 11/5/2008 | Mortgage Documents for Client and Lenders | Copy | 5 | $ | 0.15 | $ | 0.75 |
| 11/6/2008 | 341 Notice for Client and File | Copy | 2 | $ | 0.15 | $ | 0.30 |
| 11/6/2008 | Petition Letter for Client Convenience | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 11/6/2008 | Internal Billing Form for Accounting Dept. | Copy | 2 | $ | 0.15 | $ | 0.30 |
| 11/6/2008 | Plan Reprinted -- Purpose Unknown | Copy | 9 | $ | 0.15 | $ | 1.35 |
| 11/6/2008 | Copy of Credit Counseling Confirmation | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 11/11/2008 | Air Flight Itinerary Faxed by Client | Copy | 3 | $ | 0.15 | $ | 0.45 |
| 11/11/2008 | Air Flight Itinerary Faxed by Client -- Duplicate | Copy | 3 | $ | 0.15 | $ | 0.45 |
| 11/11/2008 | ECF Notice of Plan Filing for Client File | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 11/11/2008 | Plan Mail Covers for Service to Creditors | Copy | 41 | $ | 0.15 | $ | 6.15 |
| 11/11/2008 | Chapter 13 Plan for Service to Creditors | Copy | 779 | $ | 0.15 | $ 116.85 |
| 11/11/2008 | Plan Cover Letter Provided to Client | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 11/11/2008 | Plan Envelope for Parties Not on Matrix | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 11/11/2008 | Plan Envelope for Parties Not on Matrix | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 11/11/2008 | Plan Envelope for Parties Not on Matrix | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 11/12/2008 | Request to Reschedule 341 Faxed to Trustee | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 11/12/2008 | Notice of Rescheduled 341 | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 11/12/2008 | ECF Notice of Rescheduled 341 for File | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 11/12/2008 | Mail Covers for Rescheduled 341 Meeting | Copy | 41 | $ | 0.15 | $ | 6.15 |
| 11/12/2008 | Notice of Rescheduled 341 for Service | Copy | 86 | $ | 0.15 | $ | 12.90 |
| 11/12/2008 | Envelope for Mailing Notice to Debtor | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 11/12/2008 | Envelope for Mailing Notice to Trustee | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 11/14/2008 | Bills Provided by Client | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 11/14/2008 | Bills Provided by Client | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 11/14/2008 | First Payment by Client Processed by Firm | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 11/14/2008 | Envelope to Trustee for Mailing First Payment | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 11/21/2008 | Creditor Change of Address | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 11/25/2008 | Creditor Change of Address -- Duplicate | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 12/2/2008 | Documentation Requested by Creditor | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 12/2/2008 | Documentation Requested by Creditor | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 12/3/2008 | Proof of Insurance Provided to Creditor | Copy | 2 | $ | 0.15 | $ | 0.30 |
| 12/3/2008 | Proof of Insurance Envelope | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 12/3/2008 | Proof of Insurance Envelope | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 12/3/2008 | Proof of Insurance Provided to Creditor | Copy | 2 | $ | 0.15 | $ | 0.30 |
| 12/3/2008 | Proof of Insurance Provided to Creditor | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 12/3/2008 | Proof of Insurance Envelope | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 12/3/2008 | Proof of Insurance Notice of Default | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 12/15/2008 | Objection Letter to Client | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 12/15/2008 | Objection Letter to Client -- Envelope | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 12/15/2008 | Objection Letter to Client | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 12/15/2008 | Objection Letter to Client -- Envelope | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 12/17/2008 | Modified Plan Provided to Client | Copy | 9 | $ | 0.15 | $ | 1.35 |
| 12/17/2008 | ECF Notice of Filing of Modified Plan | Copy | 2 | $ | 0.15 | $ | 0.30 |
| 12/17/2008 | Mail Covers for Service of Modified Plan | Copy | 41 | $ | 0.15 | $ | 6.15 |
| 12/17/2008 | Modified Plan for Service | Copy | 798 | $ | 0.15 | $ 119.70 |
| 12/17/2008 | Envelope for Client or Trustee | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 12/19/2008 | Envelope for Client or Trustee | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 12/19/2008 | Objection Letter to Client | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 12/19/2008 | Envelope to Client to Correct Misspelling | Copy | 1 | $ | 0.15 | $ | 0.15 |

| 1/9/2009 | Second Modified Plan for Client Review | Copy | 9 | $ | 0.15 | $ | 1.35 |
| 1/13/2009 | Document to be used for Confirmation Hearing | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 1/13/2009 | ECF Notice of Filing Second Modified Plan | Copy | 2 | $ | 0.15 | $ | 0.30 |
| 1/13/2009 | Plan Envelope for Parties Not on Matrix | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 1/13/2009 | Plan Mail Covers for Service to Creditors | Copy | 41 | $ | 0.15 | $ | 6.15 |
| 1/13/2009 | Second Modified Plan for Service | Copy | 30 | $ | 0.15 | $ | 4.50 |
| 1/13/2009 | Second Modified Plan for Service | Copy | 779 | $ | 0.15 | $ | 116.85 |
| 1/13/2009 | Plan Envelope for Parties Not on Matrix | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 1/13/2009 | Plan Envelope for Parties Not on Matrix | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 1/21/2009 | Order Denying Confirmation | Copy | 2 | $ | 0.15 | $ | 0.30 |
| 1/21/2009 | Error | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 1/21/2009 | Envelope to Trustee with Endorsed Order | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 1/29/2009 | Consent Order | Copy | 2 | $ | 0.15 | $ | 0.30 |
| 1/29/2009 | Envelope Related to Consent Order | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 2/16/2009 | Pre-Confirmation Certificate Signed by Client | Copy | 3 | $ | 0.15 | $ | 0.45 |
| 2/16/2009 | Envelope for Pre-Confirmation Certificate | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 3/6/2009 | ECF Notice of Filing of Pre-Confirmation Cert. | Copy | 2 | $ | 0.15 | $ | 0.30 |
| 6/11/2009 | Cost Application -- Exhibit A | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 6/11/2009 | Cost Application | Copy | 7 | $ | 0.15 | $ | 1.05 |
| 6/11/2009 | Cost Application -- Order | Copy | 3 | $ | 0.15 | $ | 0.45 |
| 6/11/2009 | Cost Application -- Exhibit A Revised | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 6/11/2009 | Cost Application -- Order Revised | Copy | 3 | $ | 0.15 | $ | 0.45 |
| 6/11/2009 | Plan Mail Covers for Cost Application | Copy | 43 | $ | 0.15 | $ | 6.45 |
| 6/11/2009 | Cost Application for Service | Copy | 258 | $ | 0.15 | $ | 38.70 |

**DUPLICATION TOTAL**                                                          $ 519.00

| 11/6/2008 | Petition to Clients | Postage | 1 | $ | 1.85 | $ | 1.85 |
| 11/11/2008 | Plan for Service on Creditors | Postage | 44 | $ | 0.42 | $ | 18.48 |
| 11/12/2008 | Notice of Rescheduled 341 for Service | Postage | 43 | $ | 0.42 | $ | 18.06 |
| 12/2/2008 | Proof of Claim Letter (Client Request) | Postage | 1 | $ | 0.42 | $ | 0.42 |
| 12/3/2008 | Proof of Insurance to Secured Creditor | Postage | 2 | $ | 0.42 | $ | 0.84 |
| 12/3/2008 | Letter of Default (Proof of Insurance) | Postage | 1 | $ | 0.42 | $ | 0.42 |
| 12/15/2008 | Objection Letter to Client | Postage | 1 | $ | 0.42 | $ | 0.42 |
| 12/15/2008 | Objection Letter to Client | Postage | 1 | $ | 0.42 | $ | 0.42 |
| 12/17/2008 | Modified Plan for Service | Postage | 42 | $ | 0.42 | $ | 17.64 |
| 12/9/2008 | Objection Letter to Client | Postage | 1 | $ | 0.42 | $ | 0.42 |
| 1/13/2009 | Second Modified Plan for Service | Postage | 44 | $ | 0.42 | $ | 18.48 |
| 1/29/2009 | Order to Trustee | Postage | 1 | $ | 0.42 | $ | 0.42 |
| 2/16/2009 | Pre-Confirmation Certification | Postage | 1 | $ | 0.42 | $ | 0.42 |
| 6/11/2009 | Cost Application for Service | Postage | 6 | $ | 0.42 | $ | 31.92 |
| 6/11/2009 | Cost Application for Service | Postage | 37 | $ | 0.42 | $ | 15.54 |

**POSTAGE TOTAL**                                                          $ 125.75

In addition to the amounts represented above for duplication and postage, Boleman seeks

11

reimbursement for two other types of expenses through the Wyche Application. Boleman seeks reimbursement for expenses associated with a "Simplified Equifax Credit Report" in the amount of $10.00. Also, Boleman seeks reimbursement for "PACER" charges in the total amount of $0.96. The total amount of all expenses for which Boleman has applied in the Wyche Case is $655.71.

## The Brewer Case

| Date | Description | Type | Count | Rate | Amount |
|------|-------------|------|-------|------|--------|
| 2/10/2009 | Internal Intake Materials | Copy | 18 | $ 0.15 | $ 2.70 |
| 2/10/2009 | PACER Web Check | Copy | 2 | $ 0.15 | $ 0.30 |
| 2/10/2009 | PACER Web Check | Copy | 6 | $ 0.15 | $ 0.90 |
| 2/10/2009 | Client ID and SSN | Copy | 1 | $ 0.15 | $ 0.15 |
| 2/10/2009 | Equifax Credit Report | Copy | 5 | $ 0.15 | $ 0.75 |
| 2/10/2009 | NADA Vehicle Valuation | Copy | 2 | $ 0.15 | $ 0.30 |
| 2/10/2009 | Kelley Blue Book Vehicle Valuation | Copy | 3 | $ 0.15 | $ 0.45 |
| 2/10/2009 | Basic Intake Consultation Documents (Internal) | Copy | 8 | $ 0.15 | $ 1.20 |
| 2/17/2009 | Chapter 13 Plan for Client Review | Copy | 5 | $ 0.15 | $ 0.75 |
| 2/17/2009 | Chapter 13 Plan -- Duplicate | Copy | 4 | $ 0.15 | $ 0.60 |
| 2/17/2009 | Chapter 13 Petition for Client Review | Copy | 62 | $ 0.15 | $ 9.30 |
| 2/17/2009 | Affidavit for Imposition of Stay | Copy | 3 | $ 0.15 | $ 0.45 |
| 2/17/2009 | Abacus-generated Receipt | Copy | 2 | $ 0.15 | $ 0.30 |
| 2/17/2009 | Credit Counseling -- User ID, Password | Copy | 2 | $ 0.15 | $ 0.30 |
| 2/17/2009 | Credit Counseling -- Legal Disclosures | Copy | 2 | $ 0.15 | $ 0.30 |
| 2/17/2009 | Credit Counseling -- Budget Liabilities | Copy | 2 | $ 0.15 | $ 0.30 |
| 2/17/2009 | Credit Counseling -- Confirmation Certificate | Copy | 4 | $ 0.15 | $ 0.60 |
| 2/17/2009 | Schedules Reprinted for Client | Copy | 21 | $ 0.15 | $ 3.15 |
| 2/17/2009 | Documents Related to Sign Appt (Unspecified) | Copy | 28 | $ 0.15 | $ 4.20 |
| 2/17/2009 | Documents Related to Sign Appt (Unspecified) | Copy | 26 | $ 0.15 | $ 3.90 |
| 2/18/2009 | Billing Form for Client | Copy | 1 | $ 0.15 | $ 0.15 |
| 2/18/2009 | Schedule I and Plan Requested by Creditor | Copy | 7 | $ 0.15 | $ 1.05 |
| 2/18/2009 | Petition, Schedules, Statements for Client Review | Copy | 61 | $ 0.15 | $ 9.15 |
| 2/18/2009 | ECF Notice of Filing of Petition for Client | Copy | 1 | $ 0.15 | $ 0.15 |
| 2/18/2009 | ECF Notice of Filing of Petition for File | Copy | 1 | $ 0.15 | $ 0.15 |
| 2/19/2009 | Notice of 341 Meeting for Client and File | Copy | 2 | $ 0.15 | $ 0.30 |
| 2/19/2009 | Petition Letter For Client Convenience | Copy | 1 | $ 0.15 | $ 0.15 |
| 2/19/2009 | ECF Notice of Filing --Credit Counseling for File | Copy | 1 | $ 0.15 | $ 0.15 |
| 2/19/2009 | ECF Notice of Filing -- Plan (for File) | Copy | 1 | $ 0.15 | $ 0.15 |
| 2/19/2009 | Envelope for Sending Plan to Client | Copy | 1 | $ 0.15 | $ 0.15 |
| 2/19/2009 | Plan Mail Covers for Service | Copy | 55 | $ 0.15 | $ 8.25 |
| 2/19/2009 | Plan Cover Letter For Client | Copy | 1 | $ 0.15 | $ 0.15 |
| 2/19/2009 | Chapter 13 Plan for Service | Copy | 440 | $ 0.15 | $ 66.00 |
| 2/23/2009 | Motion to Continue Stay (Draft) | Copy | 17 | $ 0.15 | $ 2.55 |
| 2/23/2009 | Motion to Continue Stay (Final) | Copy | 17 | $ 0.15 | $ 2.55 |

| 2/25/2009 | ECF Notice of Filing -- Motion to Continue Stay | Copy | 2 | $ | 0.15 | $ | 0.30 |
|---|---|---|---|---|---|---|---|
| 2/25/2009 | Motion to Expedite -- Order | Copy | 4 | $ | 0.15 | $ | 0.60 |
| 2/25/2009 | Motion to Expedite | Copy | 2 | $ | 0.15 | $ | 0.30 |
| 2/25/2009 | Motion to Expedite Revised | Copy | 2 | $ | 0.15 | $ | 0.30 |
| 2/25/2009 | Notice of Motion to Expedite | Copy | 3 | $ | 0.15 | $ | 0.45 |
| 2/25/2009 | ECF Notice of Filing -Motion to Expedite | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 2/25/2009 | ECF Notice of Filing -Notice of Mot. to Expedite | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 2/25/2009 | Service Envelope | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 2/25/2009 | Service Envelope | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 2/25/2009 | Service Envelope | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 2/25/2009 | Service Envelope | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 2/25/2009 | Mail Covers | Copy | 57 | $ | 0.15 | $ | 8.55 |
| 2/25/2009 | Motion to Extend, Expedite -- Service Copies | Copy | 854 | $ | 0.15 | $ | 128.10 |
| 2/25/2009 | Motion to Extend, Expedite -- File Copy | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 2/27/2009 | Endorsed Order from Trustee -- File Copy | Copy | 4 | $ | 0.15 | $ | 0.60 |
| 3/4/2009 | Attorney Notes for Hearing | Copy | 7 | $ | 0.15 | $ | 1.05 |
| 3/5/2009 | Attorney Notes for Hearing | Copy | 4 | $ | 0.15 | $ | 0.60 |
| 3/13/2009 | Tax Returns Provided to Trustee | Copy | 21 | $ | 0.15 | $ | 3.15 |
| 3/13/2009 | Proof of Vehicle Insurance | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 3/16/2009 | Endorsed Order from Trustee | Copy | 4 | $ | 0.15 | $ | 0.60 |
| 3/16/2009 | Payment Received, Processed by Firm | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 3/16/2009 | Payment Received from Client Sent to Trustee | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 3/24/2009 | Endorsed Order from Trustee -- File Copy | Copy | 5 | $ | 0.15 | $ | 0.75 |
| 4/6/2009 | Pre-Confirmation Certification Signed by Client | Copy | 3 | $ | 0.15 | $ | 0.45 |
| 4/6/2009 | Envelope for Pre-Confirmation Certification | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 4/13/2009 | ECF Notice of Filing -Pre-Confirmation Cert. | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 4/16/2009 | Envelope for Creditor Requesting Service | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 4/23/2009 | Envelope for Creditor Requesting Service (dup) | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 4/23/2009 | Creditor Change of Address | Copy | 1 | $ | 0.15 | $ | 0.15 |
| 6/11/2009 | Plan Mail Covers for Service of Cost Application | Copy | 73 | $ | 0.15 | $ | 10.95 |
| 6/11/2009 | Cost Application for Service | Copy | 292 | $ | 0.15 | $ | 43.80 |

**DUPLICATION TOTAL**                                                          $ 324.75

| 2/19/2009 | Chapter 13 Plan | Postage | 56 | $ | 0.42 | $ | 23.52 |
|---|---|---|---|---|---|---|---|
| 2/19/2009 | Petition Sent to Client | Postage | 1 | $ | 1.85 | $ | 1.85 |
| 2/19/2009 | Client Documents | Postage | 1 | $ | 0.75 | $ | 0.75 |
| 2/25/2009 | Motion to Extend | Postage | 2 | $ | 3.29 | $ | 6.58 |
| 2/25/2009 | Motion to Extend | Postage | 58 | $ | 0.58 | $ | 33.64 |
| 3/16/2009 | Payment to Trustee Processed by Firm | Postage | 1 | $ | 0.42 | $ | 0.42 |
| 4/16/2009 | Pre-Confirmation Certification to Client | Postage | 1 | $ | 0.42 | $ | 0.42 |
| 4/24/2009 | Proof of Claim Information | Postage | 1 | $ | 0.42 | $ | 0.42 |
| 6/11/2009 | Cost Application | Postage | 2 | $ | 5.32 | $ | 10.64 |
| 6/11/2009 | Cost Application | Postage | 49 | $ | 0.42 | $ | 20.16 |

**POSTAGE TOTAL**                                                          $ 98.40

In addition to the amounts represented above for duplication and postage, Boleman seeks reimbursement for two other types of expenses through the Brewer Application. Boleman seeks reimbursement for expenses associated with a "Simplified Equifax Credit Report" in the amount of $10.00. Also, Boleman seeks reimbursement for "PACER" charges in the total amount of $2.48. The total amount of all expenses for which Boleman has applied in the Brewer Case is $435.63.

At the Court's request, Boleman additionally provided copies of several lease, service, and maintenance agreements between Boleman and its copy equipment lessors. On cross-examination by counsel for the Chapter 13 Trustee, Bollinger admitted that Boleman had not reviewed the actual expenses associated with rendering duplications as it might be calculated using the lease agreements provided to the Court.[10] Instead, Bollinger explained, Boleman arrived at the reimbursement expense multiplier of $0.15 per page in reliance on this Court's Standing Order 08-1 and the opinion rendered by Chief Judge Tice in *In re Helquist*.[11] Tr. at 89.

### III. CONCLUSIONS OF LAW

Before addressing the issue of whether Boleman is entitled to reimbursement of the expenses for which the firm has applied, it is appropriate for this Court to address its duty to review applications for reimbursement of expenses. In these and other instances, it is incumbent

---

[10] At the evidentiary hearing, Linda Forrest testified on behalf of the Chapter 13 Trustee. Ms. Forrest testified that she is an administrator for the Chapter 13 Trustee and has been so employed since 1987. Ms. Forrest did attempt to calculate the actual cost of copies using Boleman's lease agreements and paper costs she estimated using figures from the OfficeMax website. Ms. Forrest arrived at a per-copy expense approximation that was substantially less than $0.15 per page.

[11] *In re Helquist*, Case No. 06-31174-DOT, Memorandum Opinion & Order, at 6 (Bankr. E.D. Va. Aug. 10, 2007) (unpublished) ("The court will not deny copy reimbursement requested at a rate of $0.15 per printed side. Thus, a single sided copy will be reimbursed at $0.15, and a double-sided copy will be reimbursed at $0.30.").

upon the Court to remain mindful that the burden to reimburse fees incurred by counsel for a

Chapter 13 debtor ultimately falls upon creditors of the bankruptcy estate. "[S]ince every dollar

received by the applicant results in one dollar less for the creditors," justification for

reimbursement of expenses is an absolute necessity. *See Cont'l Ill. Nat'l Bank & Trust Co. v.*

*Wooten (In re Evangeline Refining Co.)*, 890 F.2d 1312, 1326 (5th Cir. 1989) (citing *In re Hotel*

*Assocs.*, 15 B.R. 487, 488 (Bankr. E.D. Pa. 1981)). The Court's duty to examine expense

reimbursement applications derives from the need to "protect the estate, lest overreaching

attorneys or other professionals drain it of wealth which by right should inure to the benefit of

unsecured creditors." *In re Busy Beaver Bldg. Ctrs.*, 19 F.3d 833, 844 (3d Cir. 1994).

Boleman seeks reimbursement of expenses in the Wyche and Brewer cases pursuant to

11 U.S.C. §§ 330(a) and 503(b)(2), Federal Rule of Bankruptcy Procedure 2016, and Standing

Order No. 08-1.[12]

---

[12] Standing Order 08-1 sets a maximum per page amount that will be accepted by the Bankruptcy
Court in the Eastern District of Virginia for copying services. Paragraph 2(c) of Exhibit 1 to
Standing Order 08-1, entitled "Guidelines for Fee Applications in Chapter 13 Cases Filed On or
After October 17, 2005," provides, in pertinent part, "[c]opying performed using a commercial
copy service must be billed at actual cost and without markup. The Court will accept a maximum
$0.15 per page as the actual cost (paper and consumables such as toner, etc.) for in-house
copying and incoming facsimile transmissions unless the applicant can demonstrate that the
actual cost is higher. . . ."

Paragraph 3 of the Standing Order 08-1 provides:

> If the initial fee charged to a debtor for routine, expected services in a Chapter 13
> case filed on or after October 17, 2005, does not exceed $3,000 plus actual and
> necessary expenses that do not exceed $300 (other than the filing fee, and charge
> for credit counseling, and personal financial management, if advanced by the
> attorney) a formal application for approval and payment of the unpaid amount
> through the Chapter 13 plan will not be required if (a) the total fee and the unpaid
> portion is clearly set forth in the Chapter 13 plan, and (b) the fee is consistent with
> the disclosure of compensation filed under Federal Rule of Bankruptcy Procedure
> 2016. The Chapter 13 plan and Rule 2016 statement will be treated as the
> application required by Rule 2016(b), and the order confirming the plan will be

As the primary statute governing compensation of professionals in bankruptcy cases, 11

U.S.C. § 330(a)(1)(B) authorizes the court to award to professionals "reimbursement for actual,

necessary expenses."[13] Section 330(a)(4)(A) mandates that "the court shall not allow

compensation for (i) unnecessary duplication of services; or (ii) services that were not (I)

reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the

case." Further, § 330(a)(4)(B) makes clear that in an individual Chapter 13 case, "the court may

allow reasonable compensation to the debtor's attorney for representing the interests of the

debtor in connection with the bankruptcy case based on a consideration of the benefit and

necessity of such services to the debtor and the other factors set forth in this section." In

applying this portion of § 330(a), courts generally require that expenses incurred were actually

---

> treated as an order approving compensation. Any objection to allowance and
> payment of compensation in the amount stated in the Chapter 13 plan must be
> filed no later than the last day for filing objections to confirmation of the plan. If
> no objection is filed, the Court may approve the fee and confirm the plan without
> holding a hearing.

Paragraph 4(C) of the Standing Order further provides that:

> The Court expects the expenses for which reimbursement is requested must be
> actual and necessary and supported by documentation as appropriate. A detailed
> itemization of all such expenses identified by type and month incurred must be
> presented to the Chapter 13 trustee and disclosed pursuant to Federal Rule of
> Bankruptcy Procedure 2016.

The $300.00 provided for expenses is intended to cover those costs that customarily arise
in Chapter 13 cases; therefore, very few applications for additional expense
reimbursement are filed in the Newport News and Norfolk Divisions of this Court.

[13] In pertinent part, 11 U.S.C. § 330(a)(1) provides that "[a]fter notice to the parties in interest
and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court
may award to . . . a professional person employed under section 327 or 1103 – (A) reasonable
compensation for actual, necessary services rendered by the trustee, examiner, ombudsman,
professional person, or attorney and by any paraprofessional person employed by such person;
and (B) reimbursement for actual, necessary expenses."

16

necessary for the proper representation of the particular client from whom reimbursement is sought. *In re Washington Mfg. Co.*, 101 B.R. 944, 957 (Bankr. M.D. Tenn. 1989); *In re Wildman*, 72 B.R. 700, 707 (Bankr. N.D. Ill. 1987); *In re Island Helicopter Corp.*, 53 B.R. 71, 72 (Bankr. E.D.N.Y. 1985) ("Out-of-pocket [reimbursable] expenses are those expenses which can clearly be traced and allocated to a particular client."). In order to be reimbursable, expenses must be incurred by a "professional person employed under section 327 or 1103." 11 U.S.C. § 330(a)(1). As with the award of fees for services, the reimbursement of expenses is entitled to be paid as an administrative priority expense. 11 U.S.C. §§ 503(b)(2), 507(a)(2).

It is well established that the applicant must carry the burden to demonstrate that expenditures were actually necessary for proper administration of the bankruptcy case before the court may order the expense reimbursed. *See, e.g., Caplin & Drysdale, Chartered v. Office of the United States Trustee, Region 5 (In re Babcock & Wilcox Co.)*, Case No. 06-9964, 2007 WL 854304, at *3 (E.D. La. Mar. 15, 2007) ("It is incumbent upon the party seeking reimbursement to prove that its expenses were 'necessary' under Section 330(a)."); *In re S.T.N. Enters., Inc.*, 70 B.R. 823, 832 (Bankr. D. Vt. 1987). By use of the term "may" in 11 U.S.C § 330(a)(1), Congress expressly authorizes bankruptcy courts to exercise discretion in awarding reimbursement for expenses to debtors' attorneys if the burden is not met. *In re Nat'l Paragon Corp.*, 68 B.R. 337, 340 (Bankr. E.D. Pa. 1986), *overruled on other grounds*, 76 B.R. 73 (E.D. Pa. 1987).[14] This discretion is also impliedly authorized by the absence of further definition in

---

[14] Rejecting the bankruptcy court's "automatic denial" of certain expenses, the district court remanded *National Paragon* to the bankruptcy court for a more critical determination as to whether the photocopying, postage, and travel expenses identified by the appellant were actual and necessary. According to Judge Ditter, the issue "requires a bankruptcy judge to examine expenses carefully in order to determine that they are actual and necessary, but it does not require the automatic exclusion of photocopying, postage and travel expenses which are

the Bankruptcy Code as to the terms "expenses" and "necessary." *Id.*   In declining to offer

further guidance as to the meaning of these words, Congress left to the bankruptcy courts the

task of identifying those expenses that may be reimbursed to applicants as actual and necessary.

*Id.*

The importance of this task in the Eastern District of Virginia cannot be overstated.  As

Judge Mitchell of this Court has explained:

> The standard form of [Chapter 13] plan is this district is a so-called "pot" plan
> rather than a "percentage" plan. In a percentage plan, creditors receive a set
> percentage of their allowed claims while leaving the exact amount the debtor will
> pay in flux until all claims are resolved. In a pot plan, by contrast, the debtor pays
> a fixed amount, and unsecured creditors are paid pro rata from the "pot" that
> remains after payment of priority and secured claims. The form plan in this
> district requires the debtor to provide a good-faith estimate of the dividend on
> unsecured claims, but the percentage shown is simply an estimate, and the actual
> dividend may be either higher or lower depending the amount of claims that are
> ultimately filed and allowed.

*In re Murphy*, 327 B.R. 760, 763 n.3 (Bankr. E.D. Va. 2005), *aff'd*, 474 F.3d 143 (4th Cir. 2007)

(citing *In re Witkowski*, 16 F.3d 739, 741, 746 & n.11 (7th Cir. 1994)) (explaining difference

between a "pot" and "percentage" plan); *see also Robins v. Burke (In re Burke)*, Case No. 85-

00404-NN (E.D. Va. Feb. 20, 1987) (unpublished) (MacKenzie, J.) (holding that the amount,

rather than the percentage, controls the debtors' obligation to pay their unsecured creditors under

the Chapter 13 plan).  Accordingly, in a Chapter 13 case where fewer allowed claims or claims

in amounts lesser than anticipated by the debtor are filed, the filing creditors receive a higher

percentage of distribution from the Chapter 13 Trustee and more of their claims are paid, unless

---

distinguished from overhead expense such as rent, utilities and salaries because they are incurred
on behalf of a particular client, and accordingly, have traditionally been expenses which are
billed to that client." *In re Nat'l Paragon Corp.*, 76 B.R. at 74.  This Court joins the district court
in its insistence that an exacting examination of expenses be performed by the bankruptcy court
upon review of an application for expense reimbursement.

the Court approves additional administrative expenses. *In re Vernon-Williams*, 343 B.R. 766,

808 n.51 (Bankr. E.D. Va. 2006), *overruled on other grounds*, *Boleman Law Firm, P.C. v. U.S.*

*Trustee*, 355 B.R. 548 (E.D. Va. 2006).

If this Court approves the additional administrative expense sought by Boleman in these

matters, distributions available to unsecured creditors in the Wyche and Brewer cases will be

commensurately diluted.  In determining which expenses are actual and necessary, therefore, this

Court holds the applicants flush to their burden of proving the propriety of reimbursement from

creditors of the estate.  Expenses that cannot be fairly characterized as "actual and necessary" to

case administration should not be passed on to creditors of the estate.  Rather, expenses that

cannot be shown as actual or necessary must be absorbed by the parties who caused them to be

incurred.

Every law firm routinely makes paper copies and computer printouts in the course of

conducting its business.  While many of these duplications may be necessary to the firm's day to

day operations, few will meet the standard of necessity demanded by the Bankruptcy Code for

administrative expense reimbursement.  The remainder of these copy and print expenses belong

to the category of "overhead," a grouping into which all ongoing expenses of running a business

must fall.  Overhead charges must not be passed on to creditors of a bankruptcy estate. *In re Mkt.*

*Res. Dev. Corp.*, 320 B.R. 841, 846 (Bankr. E.D. Va. 2004) ("Neither an attorney nor a trustee

may charge a bankruptcy estate for his or her overhead.  For example, attorneys do not separately

charge clients for . . . printing documents or copying statements and checks.  Those are clerical

functions normally included in an attorney's overhead which is taken into account in the

attorney's hourly rate charged to the client.").  In a Chapter 13 bankruptcy, the estate and its

creditors already bear the burden of remitting reasonable hourly fees to debtor's counsel.[15] Counsel may not double-bill the estate for overhead expenses that have already been factored into the established hourly rate.

The task before this Court is to determine whether the monies expended by the Boleman Law Firm for duplication[16] are reimbursable under the Bankruptcy Code. That is, this Court must identify those expenses that have been so "necessary" to the administration of the bankruptcy case so as to render them properly chargeable to creditors of the estate. This decision demands a careful scrutiny of the two applications presented, a thorough understanding of what the administration of a Chapter 13 case entails, and a nuanced interpretation of the phrase "actual and necessary" as it is used in §330(a) of the Bankruptcy Code.

Other courts have endeavored to distinguish reimbursable expenses from overhead costs so as to prohibit the overcharging of a bankruptcy estate. *See, e.g.*, *In re Nat'l Paragon Corp.*, 68 B.R. at 341 ("In the absence of specific Code instruction, we believe that which costs to be allowed are entirely in our discretion and we are inclined to consider as 'necessary' only those expenses which we do not consider as overhead. . . ."). Overhead costs have been held to include "library expense, rent and utility expense, secretarial and clerical expense, office supply

---

[15] 11 U.S.C. § 330(a)(4)(B) ("In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section."). Pursuant to 11 U.S.C. § 503(b)(2), these attorneys fees are entitled to administrative expense priority, which are paid by the bankruptcy estate before distributions are made to unsecured creditors. 11 U.S.C. § 507(a)(2).

[16] This term as used herein is intended to generally refer to photocopying by copying machines and to the printing of hard copies from computer printers. The term is used comprehensively because, as Bollinger testified, "[o]ur . . . copiers are also printers. They're – it's a high-volume printer/copier." Tr. at 96. The Court understands from this testimony that print and copy jobs are handled by the same machines and billed to clients in an identical manner.

expense, telephone expense, and the local commuting and meal expense of individual employees." *In re Thacker*, 48 B.R. 161, 164 (Bankr. N.D. Ill. 1985) (citing *In re Global Int'l Airways Corp.*, 38 B.R. 440, 444 (Bankr. W.D. Mo. 1984) (disallowing secretarial expenses); *In re Rego Crescent Corp.*, 37 B.R. 1000, 1009, 1012, 1018 (Bankr. E.D.N.Y. 1984) (disallowing costs for local transportation, library, secretarial and in-town meal expense); *In re Horn & Hardart Baking Co.*, 30 B.R. 938, 942 (Bankr. E.D. Pa. 1983) (disallowing clerical and support staff expenses)). As the *Thacker* court explained, "[t]hese expenses have a common characteristic in that they are incurred by the firm on a day-to-day basis, no matter whom it represents. . . . The traditional way to spread these kinds of daily expenses among *all* the firm's clients is for the firm to structure its hourly rates to take such expenses into consideration." *In re Thacker*, 48 B.R. at 164. On the other hand, "[c]ompensable, out-of-pocket expenses are those which can be clearly and fairly charged to the Debtors. Court fees, transcription fees, out-of-town travel expenses, delivery service, long-distance telephone calls and postage expenses, are examples of expenses which can be clearly traced to an applicant's representation of Debtors, as opposed to the firm's other clients." *Id.*

The *Thacker* court's distinction between overhead and reimbursable expenses comports with the Bankruptcy Code in that it permits reimbursement only for expenditures made to satisfy the particular necessities of individual case administration. Meanwhile, the *Thacker* definition disallows costs connected to the daily operations of a law firm. Such daily operations include efforts by individual attorneys and staff to ensure that the service they provide merits compensation at designated hourly rates. Materials used as part of such efforts include office supplies such as legal pads and pens for taking notes as well as copies and printouts of documents rendered for the benefit of an attorney's review. When copies and printouts are used

to equip an attorney, who is part of a law firm, to render the services for which it is already compensated on an hourly basis, costs for such duplication must be understood as overhead. *In re New Hampshire Elec. Coop.*, 146 B.R. 890, 892 (Bankr. D.N.H. 1992) ("To allow these 'overhead' costs to be recouped from particular clients as reimbursable expenses would basically allow the attorneys to recover those costs twice.") (citing *In re Orthopaedic Tech., Inc.*, 97 B.R. 596 (Bankr. D. Colo. 1989)). Overhead duplications include those used in case preparation and in attorney-client discussions. *In re Howard*, No. 89-4-3543, Adv. No. 90A-0089, 1991 WL 79915, at *3 (Bankr. D. Md. May 2, 1991) ("Specifically, the in-house copying costs . . . appear to be items of overhead involved in case preparation."). These costs are incurred by an attorney in the course of acting as an attorney and thus incurred by a law firm as part of its business of offering legal services to the public.[17] By contrast, reimbursable expenses are those necessary for a particular client's bankruptcy case to proceed.

Because expenditures for duplication may fall on either side of the line dividing reimbursable expenses from overhead costs,[18] it is necessary to explore the purpose behind each duplication for which Boleman seeks reimbursement. It is critical at this juncture to distinguish

---

[17] Moreover, based on the maximum $3,000.00 in fees awarded to debtors' attorneys in Chapter 13 cases on a "no-look" basis by Standing Order 08-1, the Court is satisfied that Boleman's fee compensation, which totals $3,000.00 in each of the Wyche and Brewer cases, is sufficient to cover duplication costs used for the purposes of the law firm in operating its own overhead.

[18] *In re Hillsborough Holdings Corp.*, 127 F.3d 1398, 1402 (11th Cir. 1997) ("We are also aware that courts have differed over whether expenses such as those prohibited here are or are not sufficiently client-specific to avoid the 'overhead' label. While a number of district and bankruptcy courts have declared that items such as secretarial overtime, postage, xeroxing charges, and computer research can adequately be linked to a law firm's representation of a particular client and are so compensable, others have held, like the judge here, that these items are non-compensable 'overhead.'"). The reasoning of this Court allows for reconciliation of the seemingly inconsistent decisions rendered by other courts. Moreover, this Court's distinction between reimbursable expenses and overhead costs provides a rule that may be cleanly and easily applied by courts in future 11 U.S.C. § 330 jurisprudence.

those duplications made for the convenience of the law firm ("overhead duplications" or "in-house duplications") from those duplications made at the demand of the bankruptcy cases themselves ("reimbursable duplications"). To evaluate the demands of the Wyche and Brewer Chapter 13 cases, this Court must look to the Bankruptcy Code and to other applicable rules governing Boleman's handling of those matters.  Insofar as duplication is required by those statutes and rules for the administration of a Chapter 13 case, they are "necessary" within the meaning of 11 U.S.C. § 330(a) and therefore give rise to reimbursable expense.

In the cases *sub juris*, expenses incurred for duplication in connection with effectuating service of process are the most basic examples of necessary and thus reimbursable expenses. Service of process is essential to the administration of a Chapter 13 case by legal mandate as well as practical necessity as it is indisputably required by the Federal Rules of Bankruptcy Procedure and the applicable Local Bankruptcy Rules ("Local Rules").  An important example is found in Local Rule 3015-2, which directs that any Chapter 13 Plan that is filed with the Court contain proof of service setting forth the date and manner of service and the names and addresses of all parties to whom the Plan was mailed or transmitted.  Similarly, principles of due process permeating the Bankruptcy Code as well as the applicable procedural rules demand that notice be given to creditors and parties in interest prior to significant events in a bankruptcy case.  Local Rule 2002-1(A) explicitly provides that except as otherwise provided by federal statute or court order, "the proponent of any action shall give notice to all parties affected thereby."  Since the proponent of many actions in an individual bankruptcy case is the debtor, compliance with Local Rule 2002-1(A) may require duplication of documents by counsel on his behalf.

Duplication is also required of bankruptcy practitioners in this jurisdiction who employ the Electronic Case Files system that has been established as part of the official infrastructure of

this Court.  Those attorneys are bound by CM/ECF Policy 7 entitled "Retention Requirements."

Subsection (A) of Policy 7 embodies a specific mandate pertaining to an attorney's maintenance

of documents in paper form:

> [D]ocuments that are electronically filed and require original signatures, other than that of the User, shall be maintained in paper form by the User for the duration of the case, including any related adversary proceeding or period of appeal.  Upon request of the Court, the User shall provide original documents for review.

The Boleman attorneys handling the Wyche and Brewer cases are users of CM/ECF; therefore,

they are required to maintain in paper form filed documents requiring original signatures.

Duplications of filed documents requiring original signatures, like duplications required by the

statutes and Local Rules previously described, are "necessary" for compliance with directives

governing attorneys handling Chapter 13 cases.    As a result, Boleman is entitled to

reimbursement for the expenses arising therefrom.    However, as Bollinger testified, the

electronically mailed ECF notices are printed for the records of Boleman's clients and to assist

the firm in organizing case documents chronologically. [19]  Thus, they are not "necessary" to the

---

[19] On direct examination by Leffler, Bollinger described Boleman's use of the printed ECF notices.

Q: Why is it necessary to print those documents?

A: Just so the client has [*sic*] accurate record of when their bankruptcy filing occurred, and so we have a record also in the file, in case we need a physical copy in the file.

Q: And how does the firm use that document?

A: Well, it's actually a good organizational tool.  It assists us in organizing the documents in a chronological order.

Tr. at 52.

administration of a Chapter 13 case within the meaning accorded to that term by the Bankruptcy

Code.

"PACER"[20] is an online service providing access to United States Appellate, District, and

Bankruptcy Court records and related documents.    PACER is a service of the United States

judiciary, and its Service Center is run by the Administrative Office of the United States Courts.

PACER assists attorneys in determining whether their clients have previously filed bankruptcy

cases in this or other districts.    Such an investigation is necessary to determine a debtor's

eligibility to obtain a discharge under the Bankruptcy Code.    11 U.S.C. § 1328 provides certain

restrictions on a debtor's eligibility to receive a Chapter 13 discharge if such a debtor has

previously received a discharge in bankruptcy within a specified number of years immediately

preceding the filing of his or her case.[21]    11 U.S.C. § 727 contains similar restrictions.[22]    To

ensure that a client will not be barred from receiving a discharge under §§ 1328 or 727, Boleman

must use the judiciary's PACER service to search for any records pertaining to previous

bankruptcies filed by the firm's clients.    The Court is satisfied that this PACER search is

---

[20] The acronym PACER stands for "Public Access to Court Electronic Records."

[21] In pertinent part, 11 U.S.C. § 1328 provides: "[T]he court shall not grant a discharge of all debts provided for in the plan or disallowed under section 502, if the debtor has received a discharge (1) in a case filed under chapter 7, 11, or 12 of this title during the 4-year period preceding the date of the order for relief under this chapter, or (2) in a case filed under chapter 13 of this title during the 2-year period preceding the date of such order." 11 U.S.C. § 1328(f).

[22] In pertinent part, 11 U.S.C. § 727 provides: "(a) The court shall grant the debtor a discharge, unless . . . (8) the debtor has been granted a discharge under this section, under 1141 of this title, or under section 14, 371, or 476 of the Bankruptcy Act, in a case commenced within 8 years before the date of filing of the petition; (9) the debtor has been granted a discharge under section 1228 or 1328 of this title, or under section 660 or 661 of the Bankruptcy Act, in a case commenced within six years before the date of the filing of the petition, unless payments under the plan totaled at least (A) 100 percent of the allowed unsecured claims in such case; or (B)(i) 70 percent of such claims; and (ii) the plan was proposed by the debtor in good faith and was the debtor's best effort." *Id.* § 727(a)(8)-(9).

25

necessary to the administration of a Chapter 13 case. Accordingly, the expenses associated with PACER searches, including printouts incidental thereto, will be allowed as reimbursable expenses.

Analysis compels the opposite conclusion regarding expenses for Equifax, Zillow, and other online assessment tools that are neither provided, maintained, nor officially recognized by the United States Courts. Although use of these services may be useful to debtors' attorneys in learning pertinent facts of a client's bankruptcy case before it is filed, attorneys are under no obligation to learn of such facts in this manner. While these online sources may present the most convenient means by which to gain knowledge about a client's financial situation, the convenience inures to the attorney's benefit only. In addition, the Court is aware of no requirement that printouts be rendered in connection with third-party credit reporting or property valuation. Expenses incurred in the course of using Equifax, Zillow, and other valuation websites, including the costs of printing, are not necessary within the meaning of the Bankruptcy Code. These costs will therefore not be reimbursed.

To preclude confusion as to which expenses this Court has determined to be reimbursable and which costs are viewed as overhead, indications have been included on the charts below. Disallowed expenses have been omitted and subtracted from total expenses allowed.

## The Wyche Case

| Date | Description | Type | Count | Rate | Amount |
|------|-------------|------|-------|------|--------|
| 10/3/2008 | PACER Web Check | Copy | 2 | $ 0.15 | $ 0.30 |
| 10/3/2008 | PACER Summary Page | Copy | 1 | $ 0.15 | $ 0.15 |
| 10/3/2008 | Client ID, SSN Card | Copy | 1 | $ 0.15 | $ 0.15 |
| 10/3/2008 | Zillow Property Valuation | Copy | 1 | $ 0.15 | |
| 10/3/2008 | Equifax Credit Reporting | Copy | 10 | $ 0.15 | |
| 10/3/2008 | NADA Vehicle Valuation | Copy | 2 | $ 0.15 | |
| 10/3/2008 | NADA Vehicle Valuation | Copy | 2 | $ 0.15 | |
| 10/3/2008 | NADA Vehicle Valuation | Copy | 2 | $ 0.15 | |
| 10/3/2008 | NADA Vehicle Valuation | Copy | 2 | $ 0.15 | |

| | | | | | |
|---|---|---|---|---|---|
| 10/3/2008 | Basic Intake Consultation Documents | Copy | 8 | $ | 0.15 |
| 10/3/2008 | Internal Intake Documents - Client Fills Out | Copy | 18 | $ | 0.15 |
| 10/21/2008 | Internal Workproduct/Client Information Sheet | Copy | 6 | $ | 0.15 |
| 10/21/2008 | Worksheet for Calculating Plan Amounts | Copy | 2 | $ | 0.15 |
| 10/21/2008 | Chapter 13 Petition for Client Review[23] | Copy | 62 | $ | 0.15 |
| 10/21/2008 | Chapter 13 Plan for Client Review[24] | Copy | 9 | $ | 0.15 |
| 10/21/2008 | Schedules I, J, Special Notices | Copy | 4 | $ | 0.15 |
| 10/21/2008 | Bills Provided by Clients for Attorney Review | Copy | 85 | $ | 0.15 |
| 11/5/2008 | Paperwork Signed by Clients | Copy | 9 | $ | 0.15 |
| 11/5/2008 | Schedules for Client Review[25] | Copy | 18 | $ | 0.15 |
| 11/5/2008 | Chapter 13 Plan for Client Review[26] | Copy | 9 | $ | 0.15 |
| 11/5/2008 | Receipt of Payment by Client | Copy | 2 | $ | 0.15 |
| 11/5/2008 | Credit Counseling -- User ID and Password | Copy | 2 | $ | 0.15 |
| 11/5/2008 | Credit Counseling -- Disclosures | Copy | 4 | $ | 0.15 |
| 11/5/2008 | Credit Counseling -- Budget Liability List | Copy | 4 | $ | 0.15 |
| 11/5/2008 | Credit Counseling – Certificate of Completion | Copy | 4 | $ | 0.15 |
| 11/5/2008 | Unknown -- Possibly Related to Sign Appt. | Copy | 23 | $ | 0.15 |
| 11/5/2008 | Rights and Responsibilities | Copy | 16 | $ | 0.15 |

---

[23] When Bollinger was questioned as to why it was necessary to print this item, he stated "[c]lients have to review the schedules, plan, everything. They have to – they have to review everything. It's not practical to have a client sit down and review a computer screen, especially when there is two, but it's – it's required. I mean, they have to go through and mark it up as well." Tr. at 44. In this Court's estimation, the bankruptcy petition is a document requiring an original signature that CM/ECF Policy 7 would require Boleman to retain in a client file. Had the petition been so retained, the expense would have been necessary to the administration of the Wyche Case and therefore reimbursed. However, no evidence presented indicates that the petition here was retained in the client's file in accordance with the CM/ECF policy.

[24] As in the case of the preceding entry, no evidence suggests that the Plan was retained in the Wyche file in accordance with the CM/ECF policy. *See* Tr. at 45.

[25] When questioned by Leffler as to why this item was printed, Bollinger responded, "[A]nytime – anytime during the sign appointments there will be times where schedules are reviewed and revised and require the printing of those schedules so that we can provide those – them to the client so that they can review them." Tr. at 46. It appears that these documents were also not retained in the client file under the CM/ECF policy. They are therefore not necessary within the meaning of the Bankruptcy Code and are thus not reimbursable.

[26] In response to questioning about the reason for which this item was printed, Bollinger stated, "[S]ame issue [as the preceding item], you know, people provide bills and the like. Sometimes their plan payment may change. Sometimes reviewing their case at the sign appointment, a lot of things do change, and in this particular case the plan was printed at this time." Tr. at 46. Bollinger gave no indication that these documents were retained in the client file in accordance with the CM/ECF policy. The expense is therefore not necessary to the administration of the case within the meaning of the Bankruptcy Code.

| Date | Description | | Qty | Rate | Amount |
|------|-------------|---|-----|------|--------|
| 11/5/2008 | Schedules Reprinted During Sign Appt. | Copy | 11 | $ 0.15 | |
| 11/5/2008 | Petition Provided to Client[27] | Copy | 61 | $ 0.15 | |
| 11/5/2008 | ECF Notice of Petition Filing Provided to Client | Copy | 2 | $ 0.15 | |
| 11/5/2008 | Internal Documents Printed During Sign Appt. | Copy | 26 | $ 0.15 | |
| 11/5/2008 | Mortgage Documents for Client and Lenders | Copy | 5 | $ 0.15 | $ 0.75 |
| 11/6/2008 | 341 Notice for Client and File | Copy | 2 | $ 0.15 | |
| 11/6/2008 | Petition Letter for Client Convenience | Copy | 1 | $ 0.15 | |
| 11/6/2008 | Internal Billing Form for Accounting Dept. | Copy | 2 | $ 0.15 | |
| 11/6/2008 | Plan Reprinted -- Purpose Unknown | Copy | 9 | $ 0.15 | |
| 11/6/2008 | Copy of Credit Counseling Confirmation | Copy | 1 | $ 0.15 | |
| 11/11/2008 | Air Flight Itinerary Faxed by Client | Copy | 3 | $ 0.15 | |
| 11/11/2008 | Air Flight Itinerary Faxed by Client -- Duplicate | Copy | 3 | $ 0.15 | |
| 11/11/2008 | ECF Notice of Plan Filing for Client File | Copy | 1 | $ 0.15 | |
| 11/11/2008 | Plan Mail Covers for Service to Creditors | Copy | 41 | $ 0.15 | |
| 11/11/2008 | Chapter 13 Plan for Service to Creditors | Copy | 779 | $ 0.15 | $ 116.85 |
| 11/11/2008 | Plan Cover Letter Provided to Client | Copy | 1 | $ 0.15 | |
| 11/11/2008 | Plan Envelope for Parties Not on Matrix | Copy | 1 | $ 0.15 | |
| 11/11/2008 | Plan Envelope for Parties Not on Matrix | Copy | 1 | $ 0.15 | |
| 11/11/2008 | Plan Envelope for Parties Not on Matrix | Copy | 1 | $ 0.15 | |
| 11/12/2008 | Request to Reschedule 341 Faxed to Trustee | Copy | 1 | $ 0.15 | |
| 11/12/2008 | Notice of Rescheduled 341 | Copy | 1 | $ 0.15 | |
| 11/12/2008 | ECF Notice of Rescheduled 341 for File | Copy | 1 | $ 0.15 | |
| 11/12/2008 | Mail Covers for Rescheduled 341 Meeting | Copy | 41 | $ 0.15 | |
| 11/12/2008 | Notice of Rescheduled 341 for Service | Copy | 86 | $ 0.15 | $ 12.90 |
| 11/12/2008 | Envelope for Mailing Notice to Debtor | Copy | 1 | $ 0.15 | |
| 11/12/2008 | Envelope for Mailing Notice to Trustee | Copy | 1 | $ 0.15 | |
| 11/14/2008 | Bills Provided by Client | Copy | 1 | $ 0.15 | |
| 11/14/2008 | Bills Provided by Client | Copy | 1 | $ 0.15 | |
| 11/14/2008 | First Payment by Client Processed by Firm | Copy | 1 | $ 0.15 | |
| 11/14/2008 | Envelope to Trustee for Mailing First Payment | Copy | 1 | $ 0.15 | |
| 11/21/2008 | Creditor Change of Address | Copy | 1 | $ 0.15 | |
| 11/25/2008 | Creditor Change of Address -- Duplicate | Copy | 1 | $ 0.15 | |
| 12/2/2008 | Documentation Requested by Creditor | Copy | 1 | $ 0.15 | $ 0.15 |
| 12/2/2008 | Documentation Requested by Creditor | Copy | 1 | $ 0.15 | $ 0.15 |
| 12/3/2008 | Proof of Insurance Provided to Creditor | Copy | 2 | $ 0.15 | $ 0.30 |
| 12/3/2008 | Proof of Insurance Envelope | Copy | 1 | $ 0.15 | |
| 12/3/2008 | Proof of Insurance Envelope | Copy | 1 | $ 0.15 | |
| 12/3/2008 | Proof of Insurance Provided to Creditor | Copy | 2 | $ 0.15 | $ 0.30 |
| 12/3/2008 | Proof of Insurance Provided to Creditor | Copy | 1 | $ 0.15 | $ 0.15 |
| 12/3/2008 | Proof of Insurance Envelope | Copy | 1 | $ 0.15 | |
| 12/3/2008 | Proof of Insurance Notice of Default | Copy | 1 | $ 0.15 | |
| 12/15/2008 | Objection Letter to Client | Copy | 1 | $ 0.15 | |
| 12/15/2008 | Objection Letter to Client -- Envelope | Copy | 1 | $ 0.15 | |
| 12/15/2008 | Objection Letter to Client | Copy | 1 | $ 0.15 | |

[27] Upon questioning about the printing of this item, Bollinger stated, "This would be – a copy to the client." Tr. at 51.  No evidence before this Court suggests that the document was retained in the client file in accordance with the CM/ECF policy.

| Date | Description | Type | Qty | Rate | Amount |
|---|---|---|---|---|---|
| 12/15/2008 | Objection Letter to Client -- Envelope | Copy | 1 | $ 0.15 | |
| 12/17/2008 | Modified Plan Provided to Client[28] | Copy | 9 | $ 0.15 | |
| 12/17/2008 | ECF Notice of Filing of Modified Plan | Copy | 2 | $ 0.15 | |
| 12/17/2008 | Mail Covers for Service of Modified Plan | Copy | 41 | $ 0.15 | |
| 12/17/2008 | Modified Plan for Service | Copy | 798 | $ 0.15 | $ 119.70 |
| 12/17/2008 | Envelope for Client or Trustee | Copy | 1 | $ 0.15 | |
| 12/19/2008 | Envelope for Client or Trustee | Copy | 1 | $ 0.15 | |
| 12/19/2008 | Objection Letter to Client | Copy | 1 | $ 0.15 | |
| 12/19/2008 | Envelope to Client to Correct Misspelling | Copy | 1 | $ 0.15 | |
| 1/9/2009 | Second Modified Plan for Client Review | Copy | 9 | $ 0.15 | |
| 1/13/2009 | Document to be used for Confirmation Hearing | Copy | 1 | $ 0.15 | |
| 1/13/2009 | ECF Notice of Filing Second Modified Plan | Copy | 2 | $ 0.15 | |
| 1/13/2009 | Plan Envelope for Parties Not on Matrix | Copy | 1 | $ 0.15 | |
| 1/13/2009 | Plan Mail Covers for Service to Creditors | Copy | 41 | $ 0.15 | |
| 1/13/2009 | Second Modified Plan for Service | Copy | 30 | $ 0.15 | $ 4.50 |
| 1/13/2009 | Second Modified Plan for Service | Copy | 779 | $ 0.15 | $ 116.85 |
| 1/13/2009 | Plan Envelope for Parties Not on Matrix | Copy | 1 | $ 0.15 | |
| 1/13/2009 | Plan Envelope for Parties Not on Matrix | Copy | 1 | $ 0.15 | |
| 1/21/2009 | Order Denying Confirmation | Copy | 2 | $ 0.15 | |
| 1/21/2009 | Error | Copy | 1 | $ 0.15 | |
| 1/21/2009 | Envelope to Trustee with Endorsed Order | Copy | 1 | $ 0.15 | |
| 1/29/2009 | Consent Order | Copy | 2 | $ 0.15 | |
| 1/29/2009 | Envelope Related to Consent Order | Copy | 1 | $ 0.15 | |
| 2/16/2009 | Pre-Confirmation Certificate Signed by Client | Copy | 3 | $ 0.15 | |
| 2/16/2009 | Envelope for Pre-Confirmation Certificate | Copy | 1 | $ 0.15 | |
| 3/6/2009 | ECF Notice of Filing of Pre-Confirmation Cert. | Copy | 2 | $ 0.15 | |
| 6/11/2009 | Cost Application -- Exhibit A | Copy | 1 | $ 0.15 | |
| 6/11/2009 | Cost Application | Copy | 7 | $ 0.15 | $ 1.05 |
| 6/11/2009 | Cost Application -- Order | Copy | 3 | $ 0.15 | |
| 6/11/2009 | Cost Application -- Exhibit A Revised | Copy | 1 | $ 0.15 | $ 0.15 |
| 6/11/2009 | Cost Application -- Order Revised | Copy | 3 | $ 0.15 | $ 0.45 |
| 6/11/2009 | Plan Mail Covers for Cost Application | Copy | 43 | $ 0.15 | |
| 6/11/2009 | Cost Application for Service | Copy | 258 | $ 0.15 | $ 38.70 |

**DUPLICATION TOTAL** — $ 413.55

| Date | Description | Type | Qty | Rate | Amount |
|---|---|---|---|---|---|
| 11/6/2008 | Petition to Clients | Postage | 1 | $ 1.85 | |
| 11/11/2008 | Plan for Service on Creditors | Postage | 44 | $ 0.42 | $ 18.48 |
| 11/12/2008 | Notice of Rescheduled 341 for Service | Postage | 43 | $ 0.42 | $ 18.06 |
| 12/2/2008 | Proof of Claim Letter (Client Request) | Postage | 1 | $ 0.42 | $ 0.42 |
| 12/3/2008 | Proof of Insurance to Secured Creditor | Postage | 2 | $ 0.42 | $ 0.84 |

---

[28] When asked to identify this item, Bollinger stated, "[T]hat would be the modified plan that was filed with the Court, for the client's review." Tr. at 65. No evidence on record suggests that this document was retained in the client file in accordance with the CM/ECF policy. The expense is accordingly not necessary to the administration of the case within the meaning of the Bankruptcy Code. The expense is therefore not reimbursable.

| 12/3/2008 | Letter of Default (Proof of Insurance) | Postage | 1 | $ 0.42 | |
| 12/15/2008 | Objection Letter to Client | Postage | 1 | $ 0.42 | |
| 12/15/2008 | Objection Letter to Client | Postage | 1 | $ 0.42 | |
| 12/17/2008 | Modified Plan for Service | Postage | 42 | $ 0.42 | $ 17.64 |
| 12/9/2008 | Objection Letter to Client | Postage | 1 | $ 0.42 | |
| 1/13/2009 | Second Modified Plan for Service | Postage | 44 | $ 0.42 | $ 18.48 |
| 1/29/2009 | Order to Trustee | Postage | 1 | $ 0.42 | $ 0.42 |
| 2/16/2009 | Pre-Confirmation Certification | Postage | 1 | $ 0.42 | |
| 6/11/2009 | Cost Application for Service | Postage | 6 | $ 0.42 | $ 31.92 |
| 6/11/2009 | Cost Application for Service | Postage | 37 | $ 0.42 | $ 15.54 |

**POSTAGE TOTAL**　　　　　　　　　　　　　　　　　　　$ 121.80
**TOTAL DUPLICATION AND POSTAGE**　　　　　　　　$ 535.35

## The Brewer Case

| Date | Description | Type | Count | Rate | Amount |
|------|-------------|------|-------|------|--------|
| 2/10/2009 | Internal Intake Materials | Copy | 18 | $ 0.15 | |
| 2/10/2009 | PACER Web Check | Copy | 2 | $ 0.15 | $ 0.30 |
| 2/10/2009 | PACER Web Check | Copy | 6 | $ 0.15 | $ 0.90 |
| 2/10/2009 | Client ID and SSN | Copy | 1 | $ 0.15 | $ 0.15 |
| 2/10/2009 | Equifax Credit Report | Copy | 5 | $ 0.15 | |
| 2/10/2009 | NADA Vehicle Valuation | Copy | 2 | $ 0.15 | |
| 2/10/2009 | Kelley Blue Book Vehicle Valuation | Copy | 3 | $ 0.15 | |
| 2/10/2009 | Basic Intake Consultation Documents (Internal) | Copy | 8 | $ 0.15 | |
| 2/17/2009 | Chapter 13 Plan printed by Bonnie Lenox[29] | Copy | 5 | $ 0.15 | |
| 2/17/2009 | Plan printed by Bonnie Lenox- Attachments | Copy | 4 | $ 0.15 | |
| 2/17/2009 | Chapter 13 Petition for File[30] | Copy | 62 | $ 0.15 | $ 9.30 |
| 2/17/2009 | Affidavit for Imposition of Stay | Copy | 3 | $ 0.15 | |
| 2/17/2009 | Abacus-generated Receipt | Copy | 2 | $ 0.15 | |

---

[29] When asked to identify this item and to explain why it was printed, Bollinger stated, "[T]hat would be the plan, on the first entry, of the – administrator would have – was preparing the plan at that point in time, Bonnie Lenox, and she was preparing the plan, and she would have printed off the plan along with the attachments to the plan." Tr. at 103.  No evidence on record indicates that this document was printed for the purpose of retention in the client file in accordance with the CM/ECF policy.  The same is true for the attachments apparently printed in conjunction with this document as represented by the entry immediately below.

[30] When questioned as to the reason this document was printed, Bollinger stated, "[a]fter making sure I reviewed all the bills and documents that were provided by the client, she would have taken the petition – she would have finished preparing the petition and printed it off for the file itself." Tr. at 103.  Bollinger's statement persuades the Court that this petition was printed and retained in the client file in accordance with the CM/ECF policy.  Such duplication and retention was necessary for the administration of the case and has produced a reimbursable expense.

| Date | Description | Type | Qty | | Rate | Amount |
|------|-------------|------|-----|---|------|--------|
| 2/17/2009 | Credit Counseling -- User ID, Password | Copy | 2 | $ | 0.15 | |
| 2/17/2009 | Credit Counseling -- Legal Disclosures | Copy | 2 | $ | 0.15 | |
| 2/17/2009 | Credit Counseling -- Budget Liabilities | Copy | 2 | $ | 0.15 | |
| 2/17/2009 | Credit Counseling -- Confirmation Certificate | Copy | 4 | $ | 0.15 | |
| 2/17/2009 | Schedules Reprinted for Client[31] | Copy | 21 | $ | 0.15 | |
| 2/17/2009 | Documents Related to Sign Appt (Unspecified) | Copy | 28 | $ | 0.15 | |
| 2/17/2009 | Documents Related to Sign Appt (Unspecified) | Copy | 26 | $ | 0.15 | |
| 2/18/2009 | Billing Form for Client | Copy | 1 | $ | 0.15 | |
| 2/18/2009 | Schedule I and Plan Requested by Creditor | Copy | 7 | $ | 0.15 | $ 1.05 |
| 2/18/2009 | Petition, Schedules, Statement for Client Review[32] | Copy | 61 | $ | 0.15 | |
| 2/18/2009 | ECF Notice of Filing of Petition for Client | Copy | 1 | $ | 0.15 | |
| 2/18/2009 | ECF Notice of Filing of Petition for File | Copy | 1 | $ | 0.15 | |
| 2/19/2009 | Notice of 341 Meeting for Client and File | Copy | 2 | $ | 0.15 | |
| 2/19/2009 | Petition Letter For Client Convenience | Copy | 1 | $ | 0.15 | |
| 2/19/2009 | ECF Notice of Filing -- Credit Counseling (for File) | Copy | 1 | $ | 0.15 | |
| 2/19/2009 | ECF Notice of Filing -- Plan (for File) | Copy | 1 | $ | 0.15 | |
| 2/19/2009 | Envelope for Sending Plan to Client | Copy | 1 | $ | 0.15 | |
| 2/19/2009 | Plan Mail Covers for Service | Copy | 55 | $ | 0.15 | |
| 2/19/2009 | Plan Cover Letter For Client | Copy | 1 | $ | 0.15 | |
| 2/19/2009 | Chapter 13 Plan for Service | Copy | 440 | $ | 0.15 | $ 66.00 |
| 2/23/2009 | Motion to Continue Stay (Draft) | Copy | 17 | $ | 0.15 | |
| 2/23/2009 | Motion to Continue Stay (Final) | Copy | 17 | $ | 0.15 | $ 2.55 |
| 2/25/2009 | ECF Notice of Filing -- Motion to Continue Stay | Copy | 2 | $ | 0.15 | |
| 2/25/2009 | Motion to Expedite -- Order | Copy | 4 | $ | 0.15 | $ 0.60 |
| 2/25/2009 | Motion to Expedite | Copy | 2 | $ | 0.15 | |
| 2/25/2009 | Motion to Expedite Revised | Copy | 2 | $ | 0.15 | $ 0.30 |
| 2/25/2009 | Notice of Motion to Expedite | Copy | 3 | $ | 0.15 | $ 0.45 |
| 2/25/2009 | ECF Notice of Filing -- Motion to Expedite | Copy | 1 | $ | 0.15 | |
| 2/25/2009 | ECF Notice of Filing -- Notice, Motion to Expedite | Copy | 1 | $ | 0.15 | |
| 2/25/2009 | Service Envelope | Copy | 1 | $ | 0.15 | |
| 2/25/2009 | Service Envelope | Copy | 1 | $ | 0.15 | |
| 2/25/2009 | Service Envelope | Copy | 1 | $ | 0.15 | |
| 2/25/2009 | Service Envelope | Copy | 1 | $ | 0.15 | |
| 2/25/2009 | Mail Covers | Copy | 57 | $ | 0.15 | |
| 2/25/2009 | Motion to Extend, Expedite -- Service Copies | Copy | 854 | $ | 0.15 | $ 128.10 |

[31] In explaining this entry to the Court, Bollinger stated, "[I]n looking at the notes and also knowing that this was the date of the sign appointment itself, I determined that it would have been schedules that were reprinted for purposes of providing them to the client to be sure they're accurate." Tr. at 106. No evidence suggests that these documents were retained in the client file in accordance with the CM/ECF policy.

[32] When asked to identify this item, Bollinger testified, "[I]t's everything, petition, schedules, SOFA, statement of financial affairs, everything. . . . " He also testified regarding this item that "[i]t was printed for the purpose of providing – providing a copy to the client." Tr. at 108. No evidence on record suggests that these documents were printed for retention in the Brewer file in accordance with the CM/ECF policy.

| Date | Description | Type | Qty | Rate | Amount |
|---|---|---|---|---|---|
| 2/25/2009 | Motion to Extend, Expedite -- File Copy | Copy | 1 | $ 0.15 | |
| 2/27/2009 | Endorsed Order from Trustee -- File Copy | Copy | 4 | $ 0.15 | |
| 3/4/2009 | Attorney Notes for Hearing | Copy | 7 | $ 0.15 | |
| 3/5/2009 | Attorney Notes for Hearing | Copy | 4 | $ 0.15 | |
| 3/13/2009 | Tax Returns Provided to Trustee | Copy | 21 | $ 0.15 | $ 3.15 |
| 3/13/2009 | Proof of Vehicle Insurance | Copy | 1 | $ 0.15 | $ 0.15 |
| 3/16/2009 | Endorsed Order from Trustee | Copy | 4 | $ 0.15 | $ 0.60 |
| 3/16/2009 | Payment Received from Client Processed by Firm | Copy | 1 | $ 0.15 | |
| 3/16/2009 | Payment Received from Client Sent to Trustee | Copy | 1 | $ 0.15 | |
| 3/24/2009 | Endorsed Order from Trustee -- File Copy | Copy | 5 | $ 0.15 | |
| 4/6/2009 | Pre-Confirmation Certification Signed by Client | Copy | 3 | $ 0.15 | |
| 4/6/2009 | Envelope for Pre-Confirmation Certification | Copy | 1 | $ 0.15 | |
| 4/13/2009 | ECF Notice of Filing -- Pre-Conf. Certification | Copy | 1 | $ 0.15 | |
| 4/16/2009 | Envelope for Creditor Requesting Service | Copy | 1 | $ 0.15 | |
| 4/23/2009 | Envelope for Creditor Requesting Service (Dup) | Copy | 1 | $ 0.15 | |
| 4/23/2009 | Creditor Change of Address | Copy | 1 | $ 0.15 | |
| 6/11/2009 | Plan Mail Covers for Service of Cost Application | Copy | 73 | $ 0.15 | |
| 6/11/2009 | Cost Application for Service | Copy | 292 | $ 0.15 | $ 43.80 |
| | **DUPLICATION TOTAL** | | | | $ 248.10 |
| | | | | | |
| 2/19/2009 | Chapter 13 Plan | Postage | 56 | $ 0.42 | $ 23.52 |
| 2/19/2009 | Petition Sent to Client | Postage | 1 | $ 1.85 | |
| 2/19/2009 | Client Documents | Postage | 1 | $ 0.75 | |
| 2/25/2009 | Motion to Extend | Postage | 2 | $ 3.29 | |
| 2/25/2009 | Motion to Extend | Postage | 58 | $ 0.58 | $ 33.64 |
| 3/16/2009 | Payment to Trustee Processed by Firm | Postage | 1 | $ 0.42 | |
| 4/16/2009 | Pre-Confirmation Certification to Client | Postage | 1 | $ 0.42 | |
| 4/24/2009 | Proof of Claim Information | Postage | 1 | $ 0.42 | |
| 6/11/2009 | Cost Application | Postage | 2 | $ 5.32 | $ 10.64 |
| 6/11/2009 | Cost Application | Postage | 49 | $ 0.42 | $ 20.16 |
| | **POSTAGE TOTAL** | | | | $ 87.96 |
| | **TOTAL DUPLICATON AND POSTAGE** | | | | $ 336.06 |

Similarly situated applicants have argued that their expenses should be allowed as reimbursable because duplication costs are passed on to its clients as a matter of firm custom and traditional course. This argument merits credibility in other jurisdictions in which tradition does assist courts in defining "reimbursable expense." In addressing photocopying along with postage and travel expenses, one court distinguished those expenses from overhead "because they are

32

incurred on behalf of a particular client, and accordingly have *traditionally* been expenses which are billed to that client." *In re Nat'l Paragon Corp.*, 76 B.R. at 74 (emphasis added).

Even if Boleman had argued before this Court that its duplication expenses should be reimbursed based upon an established tradition, this contention would have failed. No court in this jurisdiction has adopted a strict test of tradition by which to interpret 11 U.S.C. § 330(a), and the Court declines to do so here. Accepting that traditional practice may be a helpful indicator of an expenditure's proper character, this Court would require a robust showing that a tradition in fact exists before recognizing that tradition in an analysis of the law. Like other courts, this Court would require "proof of at least a local, if not regional, practice of professionals, both in bankruptcy and in other fields." *In re Washington Mfg. Co.*, 101 B.R. at 961. No evidence has been presented to suggest that in-house copying and printing expenses are passed on to clients in any practice of professionals other than within Boleman itself.

While this Court acknowledges that a tradition must begin somewhere, it will not begin here absent some proof that there is a justification for its birth. *Id.* It is doubtless that billing for photocopies and computer printouts is the policy at Boleman, but Boleman does not establish tradition for this district or this Court. Moreover, proof of justification for Boleman's practice is manifestly absent from the records in these cases and no tradition is begat here. While the practice of the legal profession and its various traditions may be considered, the standards codified in the Bankruptcy Code must prevail above all. Boleman has adduced no evidence tending to demonstrate that traditional practice militates in favor of passing in-house copy and print expenses on to Chapter 13 clients, and ultimately, their creditors. Such expenses are not "necessary" within the meaning of the Bankruptcy Code, and this Court reiterates its finding that the overhead duplications, as they have been designated by this Court's disallowance, give rise to

overhead costs that are not reimbursable under 11 U.S.C. § 330(a).

The applicants have met their burden to demonstrate that the expenses for which this Court has approved reimbursement are actual and necessary within the meaning of the Bankruptcy Code. The applicants have therefore also demonstrated that their actual costs exceed the $300.00 proscribed by Standing Order 08-1.[33] In maintaining alignment with Standing Order 08-1 and the Memorandum Opinion issued by Chief Judge Tice in *In re Helquist*, this Court will not deny copy reimbursement allowed at a rate of $0.15 per printed side. Accordingly, this Court will allow expense reimbursement in the Wyche Case in the amount of $536.31.[34] This Court will also allow expense reimbursement in the Brewer Case in the amount of $338.54.[35] All expenses requested in excess of these amounts must be denied as overhead costs that are not necessary for the administration of the Chapter 13 cases and therefore not reimbursable by creditors of the estates.

## V. CONCLUSION

Observing that most courts have categorically denied or approved reimbursement for duplication expenses,[36] this Court emphasizes the logical rectitude of a more attentive approach.

---

[33] The Court notes that the expenses incurred in these cases exceed the $300.00 anticipated by the Standing Order in part because each involved events extraordinary to the usual Chapter 13 case. Specifically, the Wyche Case involved several modified Chapter 13 Plans requiring service to creditors and parties in interest; the Brewer Case involved a Motion to Extend Stay and a Motion to Expedite, both of which caused expense to be incurred. The Court also notes the absence of any allegation that these events were unnecessary or the product of negligence on the part of Boleman attorneys.

[34] This amount includes $0.96 in reimbursement for PACER usage.

[35] This amount includes $2.48 in reimbursement for PACER usage.

[36] Such cases include *In re Pacific Express, Inc.*, 56 B.R. 859, 866 (Bankr. C.D. Cal. 1985) (in-house secretarial, duplicating, and postage/messenger service expenses disallowed); *In re Nashville Union Stockyard Restaurant Co.*, 54 B.R. 391, 396 (Bankr. M.D. Tenn. 1985) (copying

A blanket categorization of duplication expenses into "overhead" or "not overhead" ignores the important practical nuance at play in *Wyche*, *Brewer*, and in nearly every bankruptcy case. That is, duplications rendered in connection with each client file will not be of uniform nature. The Bankruptcy Code demands that courts look more closely to assess whether each expense is necessary to the particular client's *case* or for the convenience of the particular client's *lawyer*. In the latter situation, duplication expenditures should be identified as non-reimbursable overhead costs. Because some of the duplication costs for which Boleman seeks reimbursement are properly cast as overhead, they are not "necessary" within the meaning of 11 U.S.C. § 330(a) and shall not be reimbursed.

The significance of this Court's endeavors in these cases extends beyond the minutiae contained in the facts of the Wyche and Brewer bankruptcies. This Court has wrestled with one of the most fundamental questions of bankruptcy administration: which of the expenses of administration of a bankruptcy case should be borne by the filing attorney, and which expenses may be legitimately put to creditors of the estate. Because allowed administrative expenses reduce the dividend available to creditors to whom money is owed, this question has not been answered without due consideration by this Court. After much evidentiary review and careful

---

and typing costs said to be overhead); *In re Island Helicopter Corp.*, 53 B.R. 71, 73 (Bankr. E.D.N.Y. 1985) (in-house copying expenses allowed, but at a rate of ten cents (10¢)/copy); *In re Tech Hifi, Inc.*, 49 B.R. 876, 881 (Bankr. D. Mass. 1985) (lack of detail for xerox and telephone costs results in reduction of allowance for such expenses in approximately half the amounts sought); *In re Tolan*, 41 B.R. 751, 756 (Bankr. M.D. Tenn. 1984) (telephone calls and travel expenses not itemized or described are disallowed); *In re South. Indus. Banking Corp.*, 41 B.R. 606, 614, 615 (Bankr. E.D. Tenn. 1984) (xerox and photocopying disallowed as overhead, although delivery and telephone expenses are allowed); *In re Dee's Resort Wear, Inc.*, 25 B.R. 591, 592 (Bankr. M.D. Fla. 1982) (time for routine telephone calls and correspondence disallowed); *In re Lafayette Radio Elec. Corp.*, 16 B.R. 360, 361, 362 (Bankr. E.D.N.Y. 1982) (compensation for time expended in travel, xerox, filing, and unlogged lexis time disallowed); and *In re G.W.C. Fin. & Ins. Servs., Inc.*, 8 B.R. 122, 127 (Bankr. C.D. Cal. 1981) (undocumented photocopying, postage, service, and telephone charges disallowed).

legal analysis, this Court concludes that expense reimbursement of $536.31 must be allowed in the Wyche Case, and expense reimbursement of $338.54 must be allowed in the Brewer Case. Expenses exceeding those amounts must be denied, as the applicants failed to meet their burden to demonstrate that they are "actual and necessary" within the meaning of 11 U.S.C. § 330(a).

A separate Order will be entered consistent with the findings contained in this Memorandum Opinion.

The Clerk is ORDERED to forward a copy of this Memorandum Opinion to the Debtors; counsel for the Debtors; R. Clinton Stackhouse, Jr, Chapter 13 Trustee; and to Debera F. Conlon, Assistant United States Trustee.

Entered this _29th_ day of January, 2010, at Norfolk, in the Eastern District of Virginia.

STEPHEN C. ST. JOHN
United States Bankruptcy Judge